JW




JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

5:17-cv-5669

17  5669

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Cassandra Carter

**DEFENDANTS**
Life Insurance Company of North America

**(b)** County of Residence of First Listed Plaintiff   Northampton, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mary LeMieux-Fillery, Esq.
Martin Law, 1818 Market Street, 35th Floor
Philadelphia, PA 19103

A/P

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 1001 et seq.
Brief description of cause:
Plaintiff claims long term disability under an employee welfare benefit plan governed by ERISA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/13/2017
SIGNATURE OF ATTORNEY OF RECORD: Mary LeMieux-Fillery, Esq.

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

[Print]   [Save As...]   DEC 18 2017   [Reset]

**LS**

UNITED STATES DISTRICT COURT

**17 5669**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 45 Zummo Way, Norristown, PA 19401

Address of Defendant: 1601 Chestnut Street, Philadelphia, PA 19192-2235

Place of Accident, Incident or Transaction: Northampton, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) ERISA

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Mary LeMieux-Fillery, Esq._____, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 12/13/17    _____(signature)_____    312785
                  Mary LeMieux-Fillery, Esq. -Attorney-at-Law    Attorney I.D.#

**NOTE**: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/13/17    _____(signature)_____    312785
                  Mary LeMieux-Fillery, Esq. -Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

DEC 18 2017



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Cassandra Carter | : | CIVIL ACTION |
| v. | : | |
| Life Insurance Company of North America | : | NO. 17 5669 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x)

| 12/13/17 | Mary LeMieux-Fillery, Attorney-at-law | Cassandra Carter |
|---|---|---|
| **Date** | | **Plaintiff** |
| (215) 587-8400 | (267) 765-2031 | LTDTeam@paworkinjury.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 18 2017



# MARTIN LAW

### THE LAW FIRM FOR WORKERS

» Workers' Compensation  » Social Security Disability  » Long-Term Disability  » Veterans' Benefits

LAW OFFICES

MARTIN | WILSON | HUTTEMANN | CARLSON | DOGUM | SHAH

*All partners are Certified Workers' Compensation Specialists by the PA Bar Association's section on workers' compensation law as authorized by the PA Supreme Court.*

*from the desk of*
MARY LEMIEUX-FILLERY, ESQ.

*e-mail* LTDTEAM@PAWORKINJURY.COM

*direct fax* 267-765-2031

December 13, 2017

Office of the Clerk of Court
United States District Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106-1797

    RE:    Cassandra Carter v. Life Insurance Company of North America

Dear Clerk of Court:

    We represent Plaintiff Cassandra Carter in the above-referenced matter. Enclosed please find the following for filing:

- Complaint,
- Civil Cover Sheet,
- Summons,
- Case Management Form,
- Case Designation Form
- Check No. 9646 - $400 Filing Fee

    If you have any questions or concerns, please feel free to contact me.

    Sincerely,
    MARTIN LAW

    Mary LeMieux-Fillery, Esq.
    Attorney for Plaintiff, Rohn Renna

MLF/jr

1818 Market Street, 35th Floor, Philadelphia, PA 19103   main 215-587-8400   toll free 888-722-6671
www.PAWORKINJURY.com

$400

LS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASSANDRA CARTER | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 17 5669 |
| v. | : | |
| LIFE INSURANCE COMPANY | : | ERISA - JURY TRIAL NOT |
| OF NORTH AMERICA | : | REQUESTED |
| Defendant. | : | |

## COMPLAINT

### I. Jurisdictional Statement

1. Cassandra Carter's claim relates to an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. The subject Group Disability Income Policy of the Vanguard Group, Inc.., her employer, constitutes a plan under ERISA. Plaintiff alleges that this Court's jurisdiction is additionally invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f).

2. Venue is proper under ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because such action may be brought where (1) the plan is administered, (2) where the breach took place, or (3) where the Defendant resides or may be found.

3. At all times relevant herein, and for a significant period of time prior thereto, Plaintiff was a Recordkeeping Services Account Administrator employed by Vanguard Group Inc., and as such has standing to bring this action under ERISA, 29 U.S.C. § 1132(a). She is a vested "participant" in the group plans within the meaning of 29 U.S.C. § 1002(2)(7).

4. Venue is proper in the Eastern District of Pennsylvania. 29 U.S.C. 1132(e)(2), 28 U.S.C. § 1391.

## II. Nature of Action

5. This is a claim for an award to Plaintiff of Long Term Disability Insurance Benefits pursuant to a policy of insurance underwritten by the Life Insurance Company of North America to provide Long Term Disability Insurance Benefits ("Plan") to employees of the Vanguard Group Inc. This action is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

## III. The Parties

6. Plaintiff, Cassandra Carter (hereinafter "Plaintiff"), D.O.B. June 28, 1971, is an adult individual who is a citizen of the Commonwealth of Pennsylvania, County of Montgomery, residing at 45 Zummo Way, Norristown, Pennsylvania 19401.

7. At all times relevant, Plaintiff had been a Recordkeeping Services Account Administrator employed by the policyholder, Vanguard Group, Inc.

8. Plaintiff began working at Vanguard in June 1996 and stopped working due to her disabling medical impairments after 18 years of employment.

9. Life Insurance Company of North America ("LINA") (hereinafter "Defendant") offers group life, accident and disability insurance coverage.

10. Defendant's principal place of business and headquarters are located in the State of Connecticut at 900 Cottage Grove Road, Bloomfield, Connecticut 06002.

11. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Plaintiff received

coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7). This claim relates to the forgoing Plan.

12. At all times relevant, Defendant was a fiduciary of the Group Disability Income Policy within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002(21)(A) in that Defendant was appointed by the Plan Administrator for the Plan as a "named fiduciary" and exercised authority and control over the payment of Long Term disability benefits, which are Plan assets.

13. Defendant is also the "appropriate named fiduciary" of the Long-Term Disability Plan as described in 29 C.F.R. § 2560.503-1(g)(2), and therefore functioned as the Long-Term Disability Plan Administrator for claims procedure proposes.

## IV. The Policy

14. Defendant issued Group Long Term Disability ("LTD") Insurance coverage to Vanguard Group Inc., Policy No. LK0980241. That Policy provides income replacement of up to 66.67% of Plaintiff's monthly earnings. The Policy contains a 6 month [180 day] Elimination Period and provides monthly benefits up to age 65 or the date of the 60th monthly benefit is payable, if later.

15. Plaintiff's monthly earnings prior to disability, were $4405.01. Plaintiff is therefore entitled to a Monthly Benefit of $2937.00.

16. The LTD Policy defines *"Disability/Disabled as:*
   a.   *Disability or Disabled mean that during the Elimination Period and the next 24 months of Disability the Employee, as a result of Injury or Sickness is unable to perform all the Material Duties of their own occupation; and, unable to earn 80% or more of his/her Indexed Earnings from working in his/her Regular Occupation.*

   b.   *After Disability Benefits have been payable for 24 months, the Employee is unable to perform Material Duties of any occupation for which he/she is or may reasonably become qualified based on education, training, or experience; and, unable to earn 80% of more of his/her Indexed Earnings.*

17. Plaintiff was awarded Social Security Disability benefits on September 6, 2017. Her first month of entitlement of SSD benefits was December 2014 with a monthly benefit amount of $2011.

## V. Failure to Pay Benefits Due Under the Group Long Term Disability Plan
### I. The Disability Claim – Extensive Medical History

18. On April 14, 2014, Plaintiff ceased working for Vanguard Group Inc. as a Recordkeeping Services Account Administrator due to the severity of her multiple physical impairments, severe pain, and fatigue.

19. In addition to the above impairments, Plaintiff also suffers from: a complex tear of the right hip, degenerative disc disease of the lumbar spine, bilateral L5-S1 radiculopathy, entrapment neuropathy illionguinal state post lysis of adhesion and hernia repair, possible labral tear, and meralgia paresthetica.

20. Plaintiff has increasing pain in her groin/thigh area, lower abdomen and lower back and buttocks area with leg numbness and tingling. She has consistent reported that her pain is increased with sitting and activity.

21. Her disabling medical conditions, formerly acknowledged by LINA to be disabling per the terms of the Plan, have not improved.

22. To further complicate Plaintiff's overall health, she has a medical history of hiatus hernia status post surgical repair, gastric bypass, severe sleep apnea, high blood pressure, migraine headaches, obesity, and ulcers.

23. A July 16, 2014, MRI of her right hip with contrast evidences a complex tear of the superior labrum of the right hip.

24. A March 18, 2015, MRI of Plaintiff's lumbar spine does show disc dessication and annular fissures at L4-5 and L5-S1 with foraminal narrowing.

25. An updated EMG dated March 16, 2015, demonstrated bilateral L5-S1 radicular process with consistent findings on clinical examination including decreased reflexes and sensation. The findings of the updated EMG are consistent with the prior April 4, 2014 study.

26. The April 13, 2015, office visit of treating pain management specialist Dr. Kim diagnoses Plaintiff with chronic pain due to lumbar disc disease with radiculopathy, entrapment neuropathy illioinguinal status post lysis of adhesions and hernia repair, possible labral tear, and possible meralgia paresthetica. Dr. Kim notes abnormal EMG and MRI studies.

27. Plaintiff presented to Mercy Suburban Hospital on September 7, 2015, due to severe hip and thigh pain with swelling and dizziness.

28. An October 6, 2015, treatment note from examining neurologist Dr. Christopher Reid documents Plaintiff's antalgic gait and use of a cane.

29. Treating primary care physician Dr. Phillips coordinates Plaintiff's course of care and, as is evident from his medical chart, receives copies of most records from all treating and examining sources. In an April 20, 2015, medical source statement obtained by Plaintiff's former Social Security disability advocate group Allsup, Dr. Phillips opines that Plaintiff suffers from severe pain and fatigue limiting her to part-time work at best with the ability to lift and or carry 5 pounds' maximum. He also imposed significant restrictions and limitations with regard to Plaintiff's ability to push/pull and perform fine manipulation due to carpal tunnel syndrome.

30. The 10/12/15, 10/13/15, 2/20/17 and 2/21/17 functional capacity evaluations ("FCE") corroborate the objective findings and Plaintiff's consistent, subjective complaints.

31. The 10/12/15 and 10/13/15 FCE's determined that Plaintiff can only sit for 2 hours and 58 minutes cumulatively within an 8-hour workday and limited her to only occasional handling, fingering and feeling with her right dominant hand.

32. The most recent FCE of 2/20/17 and 2/21/17 limits Plaintiff to a work tolerance of only 2 hours and 40 minutes per day, which shows a decline from the 2015 FCE test results.

33. On May 8, 2017, Dr. Valentino prepared a Narrative Report wherein he opines that Plaintiff is totally disabled from any type of gainful employment based on the objective results of his testing which included: reduced range of motion, positive Spurling's maneuvers, positive straight leg raising tests, weakness, decreased sensation in the bilateral lower extremities and tenderness to palpitation over the lower abdomen.

34. Plaintiff's mental health has also suffered due to the severity of her physical impairments and the decline of her general health. In a November 11, 2015 medical source statement, treating psychiatrist Dr. Soloway assigns Plaintiff a fair prognosis with a Global Assessment of Functioning score of 50 due to difficulty concentrating, anxiety, distractibility, tearfulness, depressed mood, feeling of impending doom, and panic attacks with shortness of breath, sweating and palpitations.

35. He opines that Plaintiff is not able to sustain an ordinary routine or complete a normal work day and is also unable to deal with normal work stress. (Please also see Dr. Soloway's April 2015 medical opinion obtained by Allsup, Plaintiff's former Social Security disability advocate group, which is consistent with Dr. Soloway's November 2015 source statement.)

36. In their denial letter, Defendant found that Plaintiff would not be precluded from performing the Material Duties of her own occupation as it is performed in the national economy.

37. Plaintiff's past work as a Recordkeeping Services Account Administrator is skilled work requiring an SVP of 5, which is a skilled sedentary occupation.

38. Plaintiff's job entailed focus, concentration, attention to detail, decision making, and extensive communicating with coworkers and clients.

39. Plaintiff's severe anxiety and depression would significantly impact her ability to maintain the concentration, persistence, and pace necessary for skilled work, thus she would only be capable of unskilled work at best.

40. The 10/12/15 and 10/13/15 FCE's determined that Plaintiff can only sit for 2 hours and 58 minutes cumulatively within an 8-hour workday and limited her to only occasional handling, fingering and feeling with her right dominant hand.

41. The most recent FCE of 2/20/17 and 2/21/17 limits Plaintiff to a work tolerance of only 2 hours and 40 minutes per day, which shows a decline from the 2015 FCE test results.

42. Both FCE's evidence that Plaintiff cannot perform even at a sedentary level.

43. Her former occupation as a Recordkeeping Services Account Administrator required

44. The totality of the evidence establishes physical and mental impairments that preclude Plaintiff from performing the material duties of her regular occupation.

45. Defendant's reliance on the medical opinions of non-examining and non-treating medical consultants is wrong and unreasonable where the evidence establishes physical and mental impairments that preclude Plaintiff from performing the material duties of her regular occupation.

## II. <u>The Disability Claim – Claim for Benefits</u>

46. From April 14, 2014 to April 9, 2015, Plaintiff was paid long term disability benefits.

47. During this time, Plaintiff was under the "own occupation" definition of disability under the LTD policy.

48. Plaintiff's long term disability benefit effective date, the day which her benefits started, was on October 12, 2014.

49. In Defendant's August 14, 2015 denial letter, Defendant upheld its termination of Plaintiff 's LTD benefits under the policy's "regular occupation" definition of Disability — concluding that Plaintiff's physical and mental health conditions did not render her unable to perform the material and substantial duties of her sedentary skilled occupation.

50. Through counsel, Plaintiff filed an appeal on February 9, 2016, alleging that the severity of her physical impairments rendered her unable to perform the material and substantial duties of sedentary work.

51. On June 27, 2016, Defendant advised that its adverse claim determination was being overturned. This correspondence is silent on Defendant's basis for determination. To reiterate, this letter was silent on the issue of Defendant applying the mental health limitation or limiting Plaintiff 's claim only through October 11, 2016.

52. On October 12, 2016, Defendant simply stopped paying Plaintiff's benefits without any explanation. The checks just stopped coming. When Plaintiff did not receive November's check, Plaintiff proactively called to follow up on this matter.

53. On January 5, 2017, adjuster Justin Randolf advised Plaintiff that Plaintiff's LTD benefits were only approved through October 11, 2016, and that he would be sending out a letter explaining that Plaintiff has 180 days to appeal the adverse determination.

54. This was the first time any such information was communicated to the Plaintiff.

55. On January 9, 2017, Defendant advised via correspondence that Plaintiff's LTD benefits commenced October 12, 2014, under the mental or nervous disorder limitation as provided by the policy.

56. Per the LTD policy;

*The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a disability caused by, or contributed to by, any one of more of the following conditions. Once 24 months Disability Benefits have been paid, no further benefits will be payable for any of the following conditions: anxiety disorder; delusional (paranoid) disorders); depressive disorders; eating disorders; mental illness; somatoform disorders (psychosomatic illness).*

57. Defendant alleges that according to the medical information on file, as of October 12, 2014, the disabling condition precluding Plaintiff from performing her own occupation was recurrent major depressive disorder-severe; And that the medical information on file did not support a disability of a physical nature and Defendant had not received any additional information from Plaintiff to indicate otherwise. Therefore, as of October 11, 2016, Plaintiff will have received the maximum benefits payable according to the mental/nervous disorder limitation.

58. On January 19, 2017, Plaintiff advised Defendant by letter that they had improperly handled Plaintiff's claim by failing to notify Plaintiff of the intent to apply the mental/nervous disorder limitation to her claim. Plaintiff clearly indicated in this correspondence that this did not constitute an appeal and was advisory in nature only.

59. On January 26, 2017, Plaintiff received correspondence from Defendant advising that Plaintiff's request for an appeal had been received.

60. Plaintiff advised Defendant on February 9, 2017, that Plaintiff had not yet submitted an appeal, but rather that Plaintiff's January 19, 2017, correspondence was send to place

Defendant on notice that it had violated the terms of Plaintiff's LTD policy and Plaintiff's ERISA appeal rights by failing to previously notify Plaintiff of its intent to apply a limitation to her claim.

61. On July 5, 2017, Plaintiff filed an appeal of Defendant's January 9, 2017 denial, outline Defendant's mishandling of Plaintiff's claim and subsequent violation of her appeal rights.

62. On September 15, 2017, Defendant reaffirmed its prior January 9, 2017 denial of benefits.

63. The LTD policy provides Plaintiff a second voluntary appeal; however, given the Defendant's egregious mishandling of Plaintiff's claim, waives her right to that appeal. This complaint follows.

## COUNT I. – FIRST CAUSE OF ACTION
### [FOR DECLARATORY RELIEF PURSUANT TO 29 U.S.C. § 1132(a)(1)(b)]

64. Paragraphs 1 through 63 are incorporated herein by reference as if fully set forth at length.

65. An actual controversy exists between Plaintiff and Defendant arising out of the events alleged herein above. Plaintiff contends that Defendant has no legal basis for denying LTD benefits, which have been wrongfully withheld.

66. Plaintiff contends that the denial of LTD benefits is a breach of the Group Long Term Disability Plan; the practices of the Defendant should be estopped on the basis of equity; that the practices of Defendant are arbitrary and capricious; the Defendant mishandled the Plaintiff's claim; that the practices of Defendant fail to satisfy the minimum requirements of ERISA; and the practices of Defendant are barred as a matter of law.

67. Plaintiff contends that Defendant denied her a "full and fair review" of all of her records submitted by failing to consider information directly related to her LTD claim, minimized and/or failed to review or consider the findings of her treatment providers, while simultaneously attaching greater weight to the findings of the Defendant's medical consultants.

68. Plaintiff contends that the decision to deny LTD benefits and deny her appeal for benefits was wrongful, unreasonable, irrational, arbitrary and capricious, solely contrary to the evidence and contrary to the terms of the policy and the law and an abuse of discretion.

## COUNT II – SECOND CAUSE OF ACTION
## [FOR RECOVERY OF PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)]

69. Paragraphs 1 through 68 are incorporated herein by reference as if fully set forth at length.

70. Defendant has violated ERISA which also affords Plaintiff's specific appeal rights.

71. Defendant has violated the terms of the LTD policy.

72. Plaintiff contends that Defendant issued no decision limiting her claim until January 9, 2017, a full six months after when it should have issued the decision limiting her claim and three months after it stopped paying her.

73. Nowhere in this letter does the Defendant indicate that it was applying the mental health limitation, or that Plaintiff's claim was only approved through October 11, 2016. Instead, on October 12, 2016, Defendant simply stopped paying Plaintiff's benefits without any explanation.

74. On January 5, 2017, adjuster Justin Randolf advised Plaintiff that Plaintiff's LTD benefits were only approved through October 2016 and that he would be sending out a letter explaining that we have 180 days to appeal.

75. This was the first time any such information was communicated to Plaintiff.

76. The effect of this egregious claims handling is that Plaintiff is now, again, entirely without income and her 180-day appeal period now begins as of January 9, 2017, instead of running from June 27, 2017, in which case Plaintiff would have already developed and filed an appeal that would now be under review by Defendant.

77. Plaintiff seeks reimbursement and compensation for any and all benefits she should have received from October 11, 2016, through the present.

78. Defendant breached its obligations under ERISA to provide Plaintiff benefits even though her benefits are covered under the terms of the Group LTD Plan.

79. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to properly handle and pay benefits to Plaintiff, she has been damaged in an amount equal to the amount of benefits to which she is entitled under the terms of the Group LTD Plan.

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. On Count I:

1. A declaration that Plaintiff is disabled and entitled to the payment of benefits under the Group LTD Plan;

2. A declaration that Defendant is hereinafter estopped from wrongfully denying Plaintiff benefits under the Group LTD Plan without a legal basis to do so;

3. A declaration that Defendant is hereinafter estopped from denying Plaintiff benefits as a denial of such benefits is a breach of the Group LTD Plan.

4. A declaration that Defendant is hereinafter estopped on the basis of equity from continuing to deny disability benefits wrongfully withheld from Plaintiff;

5. A declaration that Defendant is hereinafter estopped from wrongfully denying benefits to Plaintiff contrary to clear, compelling and substantial medical and functional evidence.
6. Plaintiff requests the payment of reasonable attorney fees, costs and interest.
7. Plaintiff requests such other and further relief as the Court deems appropriate.

B. On Count II:

1. Plaintiff seeks a declaration of Plaintiff's right to benefits (past, present and future) under the terms of the Group LTD Plan;
2. Payment of all past benefits due Plaintiff under the terms of the Plan, with an award of pre-judgment interest;
3. Plaintiff requests the payment of reasonable attorney fees, costs and interest.
4. Plaintiff requests such other and further relief as the Court deems appropriate.

By: *(signature)*
Mary LeMieux-Fillery, Esq.
Attorney I.D. No. 312785
MARTIN LAW
1818 Market Street, 35th Floor
Philadelphia, PA 19103
(215) 587-8400
Attorney for Plaintiff

Date: 12/13/17